By the way, just so we have everybody talking on the same rules, the clerk asked us what we want to do with the cross-appeal. Let's just cover everything all together, because they do kind of cross-populate to some degree. So let's, in your presentation and when you reserve time, keep the cross-motion in mind, OK? Yes, Your Honor. Good morning, Your Honors, and may it please the Court, Patricia Young representing Mark Bradford. The District Court was correct to conclude that all four of Mr. Bradford's statements were involuntary, and that the California Supreme Court acted contrary to clearly established federal law in concluding otherwise. The District Court erred, however, in limiting the grant of habeas relief to a special circumstance retrial, and that's because the confessions infected every part of the trial. The prosecution relied on them extensively to prove every crime, first-degree murder, sodomy, and rape. And in fact, the confessions were the only evidence of premeditation and deliberation necessary for the first-degree murder conviction. Counsel, let's talk for a moment. I know it's part of the cross-appeal, but let's talk for a moment about the confessions. Of course, Judge Hatter did decide, as you have described. And he said that it was basically under the AEDPA standard that it qualified, but he quoted primarily the Colosso case, which, of course, is one of our cases. It's not a Supreme Court case, and it was a pre-AEDPA case to boot. We, of course, are now weighing this case under the standards of AEDPA, are we not? Correct, Your Honor. So I guess I'm concerned about this. In every instance, the facts and circumstances that were recited by Judge Hatter were also recited by the California Supreme Court. The cases, the facts, weighing it back and forth, they came to the conclusion that at least in connection with voluntariness that all four of the states were voluntary because you didn't have a situation where there was torture or, you know, people with lights in their eyes staying up for 36 hours and so on. And, of course, number four occurred after 24 hours. And I know he tied it together as part of a taint, but will you address, please, the issue of how do we treat this in light of the fact that Colosso was a Ninth Circuit case and that pre-AEDPA and that we are viewing this through the lens of AEDPA? I think the clearest way to pass 2254D is to find that the California Supreme Court decision was contrary to Miranda, Edwards, and their progeny. Specifically, the California Supreme Court said continued interrogation after invocation of rights is not coercion, that an Edwards violation is not coercion. Well, in fact, Miranda and Edwards were designed to prevent the coercion that is inherent in custodial interrogation. Well, they're prophylactic, correct? Yes, Your Honor. So does it establish involuntariness simply if there's a violation of Miranda? It does not establish involuntariness, but it does establish coercion when there's continuing interrogation after invocation. And we know this from Michigan v. Harvey, where the Supreme Court says that Edwards was designed to prevent police badgering. Police badgering into changing minds about invoking rights is coercion. We know this from Arizona v. Robertson, where the United States Supreme Court says further interrogation after invocation of rights exacerbates compulsion. And we know this from Middick v. Mississippi, where the Edwards rule explains that the Edwards rule was designed to ensure that the resulting statement was not the result of coercive pressures. Can I ask you this question a little bit differently? If we were only focusing on the fourth interrogation, there would be no problem, would there? Let's assume that were the only interrogation. If it was the only one, if that was the very first statement that ever existed, yes. But we can't start there. Well, that's the question I want to ask. What were the police supposed to do on the fourth one when your client came to them and said, I'd like to go on the record? Is there any way they could have removed what you think is the taint of the previous ones? Yes, Your Honor. They could have lifted the taint in two ways. One, they could have provided Mr. Bradford with counsel. And when he said, can I have counsel before we go to the arraignment, they could have said yes. They also could have advised him that what they told him earlier was not true. When they told him that by invoking his right to counsel, that means everything he says is off the record, they could have advised him that was not, in fact, true. They tricked him that it's not true that getting a statement on the record can only be done without counsel. So you're saying that because of that error, that misstatement, that the subsequent interrogations were irrevocably tainted, there was no way to correct that other than going back and saying, hey, we misinformed you? They could have provided him with counsel. Okay. Aside from that, is it irrevocably tainted by giving the incorrect information, putting aside for a moment the giving of counsel? Yes, Your Honor. The question really at that point becomes, has the taint been lifted? So we cannot simply look at that and say, Mr. Bradford waived his rights. We have to see whether that waiver of the rights lifted the taint of what happened earlier. And the taint is really the coercive pressures that were put upon him. That's a different argument than I think was made to the California court, isn't it? In other words, this is an argument that says there was a Miranda violation with respect to the fourth interrogation because notwithstanding its facial sufficiency, more should have been done because of what happened before that. The argument made to the state court was that the confession was involuntary, wasn't it? It's the same argument, Your Honor. Really, it's kind of a domino effect we have here. The fact that the coercive pressures weren't considered in the first and third interrogations to determine that they were involuntary meant that when the California Supreme Court considered the second and the fourth interrogations, they didn't apply the taint analysis. So they didn't carry over the presumption that these were now involuntary statements unless that taint was lifted. Tell me what Supreme Court case tells us there's a presumption that carries over to subsequent interrogations that were properly Mirandized. The most clear case, Your Honor, is Brown v. Illinois. But even cases predating Miranda and Edwards, including Lyons and Cluess, talk about the fact that when you have an involuntary confession, that taint carries over and the prosecution bears the burden of showing that the taint has been dissipated or that the stream of events has been broken. Can I ask you this? If we're not persuaded by your argument that there was a presumption of involuntariness that gave rise to a taint, do you, I can't even remember now, do you argue that just under the regular due process clause standard that the statements were involuntary? Yes, Your Honor. And I really want to clarify. It's not simply that the presumption of involuntariness carries over. The presumption of involuntariness arises with the Edwards violation because that's coercion. So that coercion under a normal voluntary totality of the circumstances analysis has to be considered. Well, the reason I don't think you're right about that is that we have the same rule on the Edwards side that we do on the Miranda side, which is that a mere violation of that prophylactic protection doesn't disable the prosecution from using the statements for impeachment on cross-examination. You would then go through the regular due process voluntariness analysis, right? And I still agree that you go through the regular due process analysis, but I do want to point out a difference between failure to advise with Miranda leads to a presumption of coercive activity, not a presumption of involuntariness. And where does that come from again? The presumption of involuntariness or the presumption of coercion? No. Well, involuntariness is what we're focusing on here. Yes. So where does that come from? Again, Michigan versus Harvey, Arizona versus Robertson. None of those cases say that. What they say is that the mere decision of the suspect to speak upon reinterrogation, the presumption is that the waiver of counsel at that point is invalid. That's the only presumption that arises. It has nothing to do with the inherent voluntariness of the statements. And that's why I just want to correct what I'm saying here. I really want to focus on the actual coercion, which leads to the presumption of involuntariness. You keep saying that, but there is not one Supreme Court case that says that the statements themselves are presumed to be involuntary. All they say is that the suspect's waiver of the right to counsel by continuing to speak is deemed to be invalid. And I apologize if I'm not being clear on this, but the continued badgering to waive, that is the coercive activity I'm looking at, and then I'm using that coercive activity to look at whether the will of the suspect was overbought. Okay. All I'm saying is that let's say that the police advise the person of their rights, the suspect invokes the right to counsel, and as here, the police continue to question. Clear Edwards violation statement can't be used in the prosecution's case in chief. It can be used for impeachment as long as the statement is voluntary under the due process clause, right? Yes. So that's why I'm saying we know from that alone that the mere fact that we have an Edwards violation does not give rise to a presumption of involuntariness. You still have to go through the regular due process analysis. Yes, Your Honor, and when you're looking at whether a confession is involuntary, you're really looking at two aspects. One is their coercive police activity, and two has the characteristics of the suspect such that the will has been overbought. And we know that you can't simply rely on the characteristics of the suspect. There must be that predicate coercive police activity. And that's what I'm saying, that the badgering is the predicate coercive police activity, and the California Supreme Court failed to even start with that assumption. Well, but the California Supreme Court did go through the ordinary voluntariness analysis, and it seems to me under Ed Poddeference that we're not in a position to overturn that. But that's why I was asking if you can just put aside the presumption, which I think you just get wrong in your briefs, and just focus on the straight due process voluntariness analysis. Why is the California Supreme Court's decision on that front unreasonable? Because, Your Honor, the California Supreme Court, and this is at ER 108, saying having concluded there was no coercion, they can't rely alone on the mental and physical condition of the suspect. They're saying there is no coercion. And again, badgering into waiving rights is pressure. It is coercion. Wait a minute. As Judge Wadsworth points out, I mean, there's no question the Supreme Court is dead set against, you know, physical violence, extreme situations. None of that occurred here in any of these, right? Correct. Okay. So what we're really talking about, you call it badgering. Some would say it's questioning. By definition, that's what the police do. Would it be your position that anytime the police question a suspect about a serious crime, that that constitutes badgering? I would say that what happened in this case constitutes badgering. The repeated everything was designed to pressure to get him to change his mind. And the California Supreme Court's failure to even consider that gets us past 2254D. Where does the pressure to get him to change his mind occur? They don't warn him of his rights at all the first time. They do warn him. I mean, he immediately invokes. I'm sorry. And that's excluded. It is excluded. Right. I'm sorry. Now let's go to the second. Put aside the first half of the second interrogation. Okay. Which is the first half of the second statements, which are statements on booking. Put those aside for a second. When they question him again the second time, how do they badger him? The badgering really occurs in the first and the third interrogation. Right. Okay. So there's none in the second. And the tank carries over. Okay. So tell me what the badgering was in the first and third. I had the numbers wrong, but tell me what it was. So it's really the similar conduct with different dimensions. And the first one I'll point to is that he was told that he'd be penalized for exercising his rights. Conversely, that he would reap a benefit from waiving his rights. Now you're characterizing. Tell me what they said. They say if there is mitigation, if there is stuff in your defense, like if you were too drunk, that is stuff we have to know, otherwise you're just stuck. He's also explained that when you invoke your right to counsel, that means we cannot get your side of the story. This is your chance to give it. Those may be false statements. How are they badgering? I mean, I've been looking through Supreme Court cases to try to find the kind of stuff that the Supreme Court says makes a confession involuntary as opposed to violating Miranda. And I don't, cops are allowed, unfortunately, I think it's bad law, cops are allowed to lie in interrogation. It may go to Judge Watford's point about the voluntariness of waiver of counsel, but how does it make the, not the knowingness of waiver of counsel, but how does it make the statement involuntary? As this court has explained in both Colazzo and Martinez, when you give this implied threat that you will be worse off from exercising your rights, that is coercive. This court has also held that when you state that post- Is it badgering? Everything together is the badgering, so the- Let me ask you this, I think you're hearing from all of us, we're all wondering where the Supreme Court case is that allows you to say that what you call badgering is enough to make it a non-voluntary statement. But I would ask you this, as you know, under Harrington, the court indicated that habeas relief is precluded as long as, I'm quoting, fair-minded jurists could disagree on the correctness of the state court's decision. So in this case, if this panel believes that the California Supreme Court carefully weighed the facts and the law that you also refer to and concluded that it did not undercut his voluntariness, if even one of us finds that that's not- it doesn't change their analysis or they're wrong, then we meet the Harrington standard, right? Yes, Your Honor, but I want to be very clear on this point. Well, that's as soon as we're all fair-minded. Mr. Court, I want to be very, very clear on this point. What gets us past 2254D is the failure to recognize any coercion that occurred here. I'm not saying that continued questioning on its own is what gets us to involuntariness, but it's what gets us out of 2254D. And then under this court's case law, we know that this implicit threat is coercive. We also know that stating that post-invocation statements can't be used against you is coercive. But forgive me, counsel, I think you're talking about a number of pre-EDPA cases, particularly Colasso, and maybe wonderful law, but it's not Supreme Court law, is it? No, Your Honor, and that's what I'm saying, once we satisfy 2254D. Now, there's another case I would like to point to. It's a pre-Edwards, pre-Miranda case, voluntariness analysis, Mincy v. Arizona. And there, continued questioning after an expressed desire not to be questioned without a lawyer was found to be coercive. Now, granted, Mincy was in a hospital and he was hooked up to tubes, but that was just the characteristics of the suspect to see if his will was overboring. We still need coercive activity, and the coercive activity there was simply continued questioning after he said he wanted counsel. It sounds like your primary argument. I think you've agreed that the fourth interrogation, standing alone, is just fine. Correct, Your Honor, but we cannot look at that. No, I understand your position there. The first part of the second interrogation wasn't even an interrogation. It was a statement when he was being checked in. And, of course, Edwards doesn't apply to a non-interrogation. So we've got at least two parts that are okay. So it sounds like your case really, on this part of it, rises and falls on the issue of taint. Yes, Your Honor. Whether what happened in the fourth interrogation and the third interrogation so taints everything else that even 24 hours after the third one and Mr. Radford asked to make a statement, that that makes everything bad. Is that correct? Yes, Your Honor. Can I ask you to switch gears for a moment? Let's assume, put aside whether California had clearly established procedural bar at the time, at whatever time you think is relevant, and let's assume you have to demonstrate cause and prejudice. The state seems to concede that you have cause because of abandonment. If they don't concede it, they should. Should we take up the prejudice issue or is that one for the district court? I really think it's one for the district court, Your Honor. So if we were to find cause, if we were to walk down that road and say, yes, there was a procedural bar, but there's cause, then we ought to remand to the district court to determine whether there was prejudice. Yes, Your Honor. I think we've at least proven a prima facie case that we'd get past it, but because the prejudice analysis of the cause and prejudice requirement is so tied up with the merits of the claim, that remand would be most expedient. On the procedural bar issue, your position seems to be that we need to look at what the state of the law was, in effect, 90 days after his reply brief was filed on direct appeal. Yes, Your Honor. Does that mean you never have to file the state habeas petition, that there's no deadline at all? Well, there was a presumptively timely deadline, and so the fact that a state habeas petition was eventually filed- Well, he did, but it wasn't filed within the presumptive, right? That's correct, Your Honor. And at least by the time the state habeas petition was filed, and I think it was diligently filed, so I don't want to get into that issue quite yet, California law, was the Supreme Court unreasonable in saying, gee, you've waited so long now, it wasn't presumptively timely, and under our other case law, we analyzed to see whether it was reasonably filed, and it's not. No, Your Honor, but in reviewing procedural bar, there's no, you don't need to look at whether the California Supreme Court was reasonable in implying compliance bar. No, no, but was there a clear, there seems to have been, at least by 2000, a consensus in the California Supreme Court that our rule is 90 days presumptively timely, otherwise we look at the facts of the case to see whether you filed reasonably timely, correct? Yes. So by 2000, you're not really arguing that it was filed reasonably timely, are you? No, Your Honor. So you have to be arguing that that rule wasn't in effect. We have to look backwards on the rule. Yes, Your Honor. And that's why I get back to my first question, then. There's no time limit at all? That applied in 1996, and the idea was it was presumptively timely. So that you could today, had you not done so already, first file your state petition and it would not be for federal purposes at least subject to a procedural bar? It would likely be subject to another procedural bar, but not necessarily the timeliness. Not the timeliness one? Yes, Your Honor. Okay. I understand your position. I did just really want to go back to the main issue, the confession issue here. And just, again, to be absolutely clear, the only argument about continuing interrogation is that gets us past 2254D. It does not get us all the way there. And after that, we look to this Court's cases, most notably Colazzo and Rodriguez, to find that coercion existed because he was told his statements couldn't be used against him, because he was given this implied threat, and because his rights were not honored. And I really want to focus on the fourth statement, because I do think that is the most crucial one, that even though Mr. Bradford called back the detective, that does not dissipate the taint, and in fact is evidence of the continuing coercion that existed. Again, in Colazzo and Rodriguez, this Court explains that when that is a response to an invitation, during that third interrogation, Mr. Bradford is given a card from the detective and said, Think about it. If you want to make a statement before we go to court on Thursday, and it's your last opportunity to do so, and the Court's going to consider everything, and me, the detective, is the one who's going to tell the Court this information, you need to call us back. And he did. And what's your post-AEDPA Supreme Court case that says that? Your Honor, my point is that's under de novo review once we get past AEDPA, because the California Supreme Court didn't consider that any coercion happened in this case, and that's simply wrong. With respect, counsel, we read a different case, but I thought that the California Supreme Court considered almost, it wasn't word for word, but they considered and recited virtually everything that was said, everything that was done, the time periods, everything that Judge Hatter talked about. Did I read the wrong case? Your Honor, the main point, again, it's at ER 108. They say they cannot find an involuntary statement, and they cannot carry over any taint. That was their conclusion, having read the same thing that Judge Hatter did. In other words, these jurists on the California Supreme Court reached a different conclusion than Judge Hatter did. They're all honorable people, but indeed they're fair-minded jurists. And the question is, what do you do about that? Under AEDPA, you've got the highest state court in California that went through this, reviewed all the facts, reviewed all the law. They may have not cited one of the cases that you did, but the rest of them, like Ennis and so on, they cited all those, and yet they came to a different conclusion about voluntariness. They said all four statements were voluntary. The first and the third were not properly brandized, could have only been used, as Judge Watson pointed out, for impeachment, but they were voluntary. And I'm struggling with the fact that under AEDPA, I don't see how we get around the problem that, you know, this was a high court, they considered all those things. Yes, our fine district judge came to a different conclusion, but that's under AEDPA, that's not the controlling standard, is it? No, Your Honor, and again, the point is they came to the conclusion that it was voluntary because there was zero coercion. I'm not saying that they found coercion that didn't amount to overcome his will. They found zero coercion, and that's simply not correct. That is contrary to Mincy, Michigan, Miranda, Arizona v. Robertson, and Edwards. You're saying they used that terminology, they found zero coercion? Not the exact word zero, but again, at 108 they say, having concluded there was no coercion, we cannot conclude the statement was involuntary based solely on his demeanor. How do they define coercion? I mean, are they saying they didn't tie him up in beating? Or I know from your perspective, the very interrogation, the pressure of being interrogated is coercion, right? That's correct, and they didn't even find that. They found it unethical. But they cited it. They cited it, but to conclude that that's not even coercion is contrary to clearly established federal law. So the failure to recognize is Michigan v. Harvey, Arizona v. Robertson, Minick v. Mississippi, and Mincy v. Arizona. Your Honors, I see my time is running down. Do you want to save some? Do you want to save some time? Yes, I'd like to save the remainder of my time, if that's all right. Unless either of my colleagues want to ask a question right now. Why don't you save the balance of your time then, Counsel? May it please the Court, Deputy Attorney General Sciamatta-Costello, on behalf of Respondent. I'll bet you disagree with her. Yes, Your Honor, I do. In fact, the California Supreme Court entirely reasonably rejected Petitioner's Miranda claim. It does come down to the admissibility of the fourth statement, and the Court reasonably found that that statement was admitted properly. The Edwards presumption does not apply to that statement because, as he expressly conceded in state court, Bradford was the one who initiated that statement. Well, I think your argument is better made that there's no Supreme Court case that says that. I'm not sure, in this case, if I were looking at a de novo, I wouldn't have a real problem with what occurred here. There's massive violations of Miranda, and they eventually get it right. I'm not sure, if this were a de novo review, that that's the right determination. All you need to do is tell us the Supreme Court hasn't said that yet. That's correct, Your Honor. Otherwise, I'm not all that enthusiastic with your defense of what occurred here. It's pretty bad conduct by the police. There are certainly two Edwards violations with respect to the first and third statement. And as all the state courts that looked at this issue found, they should have been excluded, and they were excluded. So based on the Edwards violations, the first statement was excluded, the third statement was excluded, and both the trial court and the California Supreme Court condemned the conduct of the officers in proceeding to question Bradford after he had invoked his right to counsel. And I guess what I'm saying is that a California Supreme Court decision that excluded the fourth would not, in my view, have been unreasonable. It's not preordained. The question is whether their decision that let in the fourth is unreasonable. Yes, Your Honor, that's right. Because the fourth statement falls outside of the Edwards presumption, the case does come down to, was the fourth statement voluntary? And if the fourth statement standing alone is voluntary, which Petitioner has conceded, the only question then is, was there actual coercion involved in obtaining one of the prior statements that somehow carried over into the fourth statement? Well, her argument's a little bit different, I think. Her argument is that the Miranda waiver in the fourth one can't be viewed in isolation, that the Miranda waiver in the fourth one is suspect because of all of that occurred before. How do you respond to that? Your Honor, that's simply incorrect, because the Petitioner under ELSTAD, the Petitioner keeps referring to a taint that carries over from a prior statement to the fourth statement. But in ELSTAD itself, the Supreme Court considered that very same argument, the fruit-of-the-poisonous-tree doctrine from the Fourth Amendment context, and it specifically rejected that. It says, patently voluntary statements taken in violation of Miranda must be excluded. So we know that just because there's a technical violation, it's not necessarily involuntary, meaning actually coerced. And then in considering the taint argument, the Court says, no further purpose is served by imputing taint to subsequent statements obtained pursuant to a voluntary and knowing waiver. And so the Court says, we hold today that a suspect who has once responded to, in that case it was an unwarranted, yet uncoercive questioning is not thereby disabled from waiving his rights and confessing later. And that is exactly what we have here. And what's the cite on that, counsel? That's the ELSTAD case, Your Honor, at page 307. And it's U.S. what? I could have a moment. Yeah, what? Your Honor. 470 U.S. 298 at page 307. 70. 470 U.S. 298, page 307. Thank you. Can I ask you, I don't want to cut you off on the confession stuff, but I'm interested in the certified questions. Yes, Your Honor, in terms of the procedural bar issues. Yeah. So first, let's assume there is a procedural bar. I want to get back to that in a second. You agree there's cause here? Your Honor, no, I don't agree there's cause. Surely his habeas counsel abandoned him. Yes, that's true. But the Federal Public Defender's Office was appointed well before and so that we had overlapping representation in the case. Appointed in federal court? Yes, in 1997. Right. When did they have a state court appointment? Eventually they filed. Okay, so in 1997, the Federal Public Defender's Office is appointed in federal court where they raise all of the claims that they ultimately raised in 2000. And they go to the district judge and say, we've got a problem. Some of the claims we're raising are not exhausted. We'd like you to stay and obey. And the district judge does nothing for how many years? I believe a motion on exhaustion was pending for a year. Okay. And then at that point, they go to the state court even without the abeyance and say, here's our claims. Why isn't that reasonable diligence? Because as of 1993 and 1998, the Federal Public Defender's Office is on notice that in order to timely present your claims to state court, you have to do it within a reasonable time. But Mr. Bradford at the time is represented by appointed counsel in state court, correct? Yes, he is. Yes, that's correct. And in 1996, and this is the question I really wanted to ask you. This is the strangest part of this case to me. 1996, his counsel moves for an extension of time to file the state habeas petition. Yes, correct. And the Supreme Court says, you don't need an extension because there is no time limit. They're not subject to a due date. So tell me when this due date arose if there wasn't one in 1996. Okay. So there is no, except for the 90-day presumptive timely window. And one thing I want to clarify is there is a timely, a presumption of a timely filing within that 90-day window from the due date of the reply. Right, and that's been true for a long, long time in California. Correct. The rules have expanded that now, but at the time, that was the longstanding rule. After that 90-day window, however, we don't have a presumption of untimely filing. Both Clark and Robbins lay out that the time frame is a reasonable time. It's the absence of substantial delay. I get your point on this to my colleague, but at what point was the counsel who didn't do anything that was appointed by the California Supreme Court relieved from Radford's representation and the federal public defender was free to even file at that point? You can't have two counsels at the same time, can you? Well, not appearing at the same time unless the, but what happened in this case was that the federal public defender's office was the one who moved to remove him and to become appointed. Well, that's fine, but until they did, they weren't counsel, were they? Correct, but they could have done that much sooner. In fact, in 1998, the federal public defender's office moved for access to the sealed and confidential materials that state habeas counsel had already filed. But you just told my colleague, I think, that the Supreme Court agreed with him, that the Supreme Court just said, hey, there's no problem in terms of timing. There's really no deadline here. So from their perspective, the fact that this guy wasn't doing anything didn't seem to bother them at that time. You've got a man who's representing Mr. Radford. You have other people in the federal court who are doing something. But I just don't see how they have the right to say, well, let's get rid of this other counsel right now because he's doing what the Supreme Court said was okay. How does that work? That's not for 15 more months. And, in fact, they did go to state court and ask the court to remove Mr. Milberg from the case, and that's something they could have and should have done much sooner. How long once they did that and he was removed, how long between the time that he was removed and the filing, how long was that period? I believe that was on the same month of January 2000. So basically when the other counsel was removed, they promptly filed. Correct. So what's wrong with that? Because they waited more than a year when it was apparent from the records that they obtained in 1998 that Milton Milberg had not done anything since 1998. Those records also show that he was only investigating a single claim of ineffective assistance of counsel. And so once the Federal Public Defender's Office is obtaining records in the state court proceeding itself as early as February of 1998 and they can read what the status is and what he's been doing, they know as of that time, from the time that they obtained those records, they know there's no actions and nothing being filed in state court. And yet they've now waited until January of 2000 to file the petition in state court. And the only explanation that they gave the federal court for cause was, well, State Habeas Counsel abandoned the petitioner. Well, you do agree State Habeas Counsel abandoned the petitioner. Absolutely. Okay. Let's assume that we don't buy your lack of diligence argument. Do we have cause? If... That's your only argument against cause is lack of diligence of the FPD, correct? Correct. Okay. So let's assume we don't buy that. What do we do with the case? If the only factor the court will consider for cause is the State Habeas Abandonment... I didn't say the only factor we would consider. I'll consider... Let me... Let's just assume for purposes of discussion I have considered the heck out of your argument and I reject it. Yes. So it's not that we're not considering factors. We don't find that's enough to demonstrate absence of diligence. Do we then have cause? Yes. Okay. If we have cause, what should we do? If the court finds cause, then I believe that the court has enough information to decide that the petitioner still cannot make a showing of prejudice in this case. One of the judges on this panel once said that prejudice is a case-specific analysis best initially done by the district court. Was he wrong? Your Honor, I think that's ordinarily true. But in this case, I think there is enough information before this court, especially given the party's briefing of the facts of the case and the promissory analysis for the guilt phase, that the court can decide there is no prejudice shown because the petitioner's claim is predicated on the notion that Mr. Bradford had consumed a nearly fatal amount of alcohol, with an alcohol level of .497 in this case, and the actions that he took towards the victim in this case, strangling her, stabbing her repeatedly in the chest, slashing her throat two times, taking care of his laundry... Are we supposed to take judicial notice of the fact that somebody who's highly intoxicated couldn't do that stuff? No, Your Honor... They have a toxicologist who says, based on the report that you all didn't provide to the defense, that his blood alcohol level was extremely high. Why isn't that enough to at least establish a prima facie case of prejudice? Again, in light of the facts, Your Honor, I think it's simply inconceivable that a reasonable jury would have believed that somebody under a near-fatal dose of alcohol could take the actions and make the decisions that Mr. Bradford took... Could a reasonable jury believe that it impaired his mens rea, if you will, that he might have been acting recklessly but not intentionally? I don't believe on the facts of this case that would be a reasonable conclusion, Your Honor, because, as mentioned, he stabbed the victim in the chest seven times. He also strangled her. But, counsel, you're not responding to my colleague's question. He's dealing with the mens rea issue here. And weren't there two jurors who indicated that they didn't think that he was very intoxicated, and that played into their decision to find him guilty of first-degree murder? In this case, the report, if there was one, the blood test would have shown 13 hours, I think it was, after the incident occurred. They could have worked backwards in seeing exactly what the blood alcohol content was. It wasn't given to them. But that seems to play a really big role in whether this is first-degree murder or second-degree murder, doesn't it? Your Honor, the juror declarations can't actually be considered to look at what they were thinking about during deliberations. Well, but you're saying the evidence was so overwhelming that no reasonable juror could have... I take your point, but when I look at the evidence, I'm sort of like those jurors. I say, there wasn't much evidence here of drunkenness, and that seems to be his only defense. And it turns out, A, it wasn't presented, and B, there is some pretty strong evidence of drunkenness. There was evidence presented to the jury through all of the witness testimony, including Bradford's statements that were admitted, that he had consumed a fair amount of alcohol that evening, including beer and hard alcohol. And so there was evidence that he had consumed a substantial amount of alcohol that evening, but that he wasn't so impaired that he couldn't commit these acts, have conversations, make arrangements to leave town, pack his bag, take Coke's belongings with him, and take all of these actions that simply run right up against the idea that he was so intoxicated that he couldn't form specific intent. But are you agreeing with Judge Hurwitz, though, that if there's cause, that the prejudice issue should be sent back to the district court, because based on your determination or your claims, it sounds like an evidentiary hearing might be required to determine whether there's prejudice. If the court is not satisfied with the current record on that, then yes, the case should be remanded for the district court to decide whether or not the petitioner can establish prejudice. I assume you really don't want an evidentiary hearing. What you want is the court to look at the record and make that determination, right? Your Honor, we can certainly have an evidentiary hearing on the prejudice issue if that's what the district court decides it needs to resolve that. So can I take you back to the coerced confessions claim? Yes, Your Honor. So just focusing on whether the California Supreme Court did something wrong enough to free us from the constraints of AEDPA, your opponent's argument is that the California Supreme Court basically said there was no coercion here whatsoever and that that is inconsistent with what the Supreme Court has said, the effect of the kinds of tactics the police used here, including ignoring the person's invocation, that the Supreme Court has clearly said that that does give rise to coercion of some sort. It might not by itself render the statements involuntary, but it certainly is coercion that has to be factored into the analysis. And your opponent argues that the California Supreme Court just completely missed that and therefore whatever conclusions it ultimately reached, we don't have to defer to because it applied the wrong legal framework. So what's your response to that? Your Honor, my response is that the court did find there was no actual coercion, but the petitioner continues to confound the legal presumption of coercion that arises under Edwards and actual coercion and then somehow draws a distinction between the absence of actual coercion and involuntariness. Those two are the exact same thing. Once the court reasonably decided that Edwards did not apply to the fourth statement, it was only required to and reasonably considered all of the prior statements, everything that the detectives said. The three main theories that the petitioner presented to the state court for psychological coercion, the court's opinion goes through each one of those and decides why the court is finding those were not inherently coercive, in this case in the straight traditional voluntariness type analysis. And in this case, we have no testimony from Bradford that he was in fact coerced by anything that the officers ever told him. And in fact, the statements themselves dispel any notion that he was actually coerced. He ends the fourth statement by saying when he's asked if he'd be willing to talk to one more officer, I'll be more than glad to talk. He starts off that statement by saying, I have some questions for you. I'll probably talk. I don't know. And so as the California Supreme Court reasonably found that indicates he didn't feel compelled to give that statement. But put aside the second and fourth, because I think the heart of their argument goes to the attack on the California Supreme Court's ruling with respect to the first and the third, right? Correct. Because the California Supreme Court said with respect to both of those statements that there was no coercion, and those statements themselves were voluntary, right? Correct. Okay. I think they're just fighting over that because if that is wrong, then they can take advantage of our decision in Colosso, which I think if we were able to apply it here would probably mean you would lose. So go back just to the first and third statements. Why is the California Supreme Court right to say that basically nothing the police did was coercive in the context of those statements? That it didn't give rise to actual coercion, Your Honor. The court did condemn the tactics of the officers, but there's no U.S. Supreme Court case that considers any of the techniques that the officers used in either of the first or third statements. Again, not saying that they were proper. The court condemned those as unethical, and we agree with that. But the question is, was it actually coercive? And there's no Supreme Court case that looks at statements of that nature and deems or holds those to be actually coercive. Is part of the problem here the court's conflation of coercive activity with coercion? In other words, the California Supreme Court does say there was coercive activity here. I don't believe the court goes so far as to say that. I think this helps you, so don't stop me. I think what the California Supreme Court is saying is there was coercive activity, but at the end it didn't amount to such coercion as to render the statements involuntary. Part of the problem is our use of terms here. The California Supreme Court does look at coercive activity and say there was coercive activity. I don't believe the court used that phrase in referring to the conduct of the officers. It says it was unethical. Unethical activity is a necessary predicate, but not does it does not itself compel a finding that the resulting confession was involuntary. And then they go on to find it not involuntary. So I think the analysis the California Supreme Court did was there was some coercion here. You can't doubt it. There was some coercion. But it didn't, in the end, render the statements involuntary. I respectfully disagree, Your Honor. I do not believe it. Well, I think that analysis is consistent with Supreme Court law. If you disagree and you think they made a different analysis, you're in trouble. Well, I believe the court found that there was no coercion. Tell me where they said there was no coercive activity. The court says that all of the statements are voluntary. I agree. I agree they said that. Tell me where they said there was no coercion. I'm not saying that the court expressly says we've looked at statements one and three, although it does say we find no coercion. So that even if Tell me where they said it. Okay. When the court is referring to Petitioner's argument that his mental state in and of itself should have Right. And that's a separate issue. Yes. It is a separate issue. But in the process of addressing that, the court does say, because we find And maybe I'm missing it. See, I think what I thought what the court said, notwithstanding your characterization, is there may have been some bad activity. It may have been coercive, but it didn't make this statement involuntary. Here's the quote from the opinion, Your Honor. Having concluded no coercive threats or promises were made, we cannot conclude the defendant's statement was involuntary solely because of an alleged physical or mental condition. Right. They concluded that no coercive threats or promises were made. That's different than whether there was coercion. The fact that there may have been some coercion doesn't render a statement involuntary, does it? I'm sorry. Could the court repeat that? The fact that there may have been some coercive activity, not in the nature of a threat or promise, putting the guy back in his cell after you tell him that this is your last chance, does that by itself render a statement involuntary? No, I agree, Your Honor, that in order to find a statement involuntary, there's two elements. One is coercive police activity, and the second is actually breaking down the suspect's will. So if you have just the first one, you would still need the second one. See, and the reason I ask is I think what makes this case a little bit difficult is the confusion of terms. The California Supreme Court recognizes that the police did bad things. Correct. And they don't think they rise to the level of unconstitutional threats or promises, but I think it's fair to say they regarded coercion here and just at the end of the day didn't think these statements were involuntary. You don't think that's what they did? I don't believe that is what the court did, Your Honor, because— Let me switch it then a little bit from what my colleagues—you're talking about the California Supreme Court. Let's talk about the U.S. Supreme Court. What's your best authority or authorities from the U.S. Supreme Court that defines what at least that court means by coercion to the extent that it renders a statement involuntary? Your Honor, the types of cases where the Supreme Court has found actual coercion, in Lyons, for example, the court considered actual police brutality, and we talk about that case in one of the briefs. We have nothing of that nature here. There are other cases that talk about threats, and the court has specifically said a threat of physical harm would constitute coercion. There is another case, and I don't recall the name offhand, but if there's a threat made towards a family member of a suspect, that could well— Basically, the Supreme Court views coercion from your perspective. Either there's a physical harm, a physical threat, or a physical threat to a family member. Or there can also be a situation where if they threaten the suspect, his family, certain types of promises, so a promise for leniency, which we do not have here, could also be problematic. And the reason I think that— What do you have in mind there? In terms of leniency? No, no, promises. In terms of what they promise the defendant? Leniency? Sure. Maybe something along those lines. If they contradict the Miranda warnings or if they improperly promise some sort of leniency, then perhaps that would be a problem. But here we don't have any of that, and the reason that the California Supreme Court is referring to coercive threats or promises in its opinion is because that was the petitioner's claim. What he claimed in state court was, I was promised leniency, but the statements don't bear that out. So if I understand correctly, then you're not really disagreeing with what my colleague asked. He asked whether the California Supreme Court referred to coercion. I gather you can't say they didn't because they did, but they weren't talking about coercion that meets the standard of the U.S. Supreme Court to overbear the will of the defendant here and render the statement involuntary. Is that a fair statement? I think it's both, Your Honor. I think the court found that although what the officers did was improper and unethical, that if we just focus on the officer's conduct, that that doesn't involve inherently coercive activity in terms of actual coercion. And then the court in total found that all of the statements were voluntary and repeatedly referred to the trial court's finding that Mr. Bradford was eager to talk, and his statements bear that out and the tapes of the interviews bear that out. So they're not only finding that whatever the police did in this case that the court itself is saying is unethical, it doesn't rise to the level of actual coercion, and in this case we know from Bradford's own statements that his will was not broken down, and we know that from the tapes and from the things that he said during the interviews. So I believe the court is finding both things, that the officer's conduct doesn't rise to the level of actual coercion and also that Mr. Bradford was not in fact actually coerced in the sense that his will being broken down. Let me ask you this differently. Did the court conclude that the conduct didn't arise to the level of unconstitutional coercion? The court doesn't use that particular phrase in its opinion. I understand. It would be better for you if it did, so I'm asking you that question. Do you think is that what they did? I believe that is what the court held, yes. I believe that's the court's ultimate conclusion, especially when it says, having concluded no coercive threats or promises, and again the reason they're referring specifically to threats or promises is that that was the petitioner's claim in state court, that I was psychologically coerced by promises of leniency, threats that I think that one of the arguments was something along the lines of, in order to avoid the death penalty I need to confess, but looking at those statements, there's nothing of the sort that happened here. And so the court reasonably found, based on these facts, that whatever the officers did didn't actually rise to the level of actual coercion, and in this case, particularly considering the tapes, Bradford's eagerness to talk, the things that he said at the open and close of that first statement clearly indicate that he was not actually coerced, and he didn't believe that he was being compelled to make any of the statements, and again, he never testified at the pretrial hearing, so there's no evidence in the record, nothing from Bradford that says, this particular statement is what compelled me to talk to the police, or this particular tactic made me scared. Let me ask you, I think I understand your point on that. Let me ask you a question about ineffective assistance. Let's assume we get past all the procedural bars, and the question is, is there a prima facie case here of ineffective assistance to counsel at trial and during the post-trial process? What's your position on that? On the merits of the ineffective assistance for failing to present an intoxication defense? Yeah. I believe, Your Honor, that given the allegation being that Mr. Bradford had consumed a nearly fatal dose of alcohol, there is no ---- He failed to present an intoxication defense. He did not present an intoxication defense. Okay, and there was substantial evidence, some of it withheld, that Mr. Bradford was intoxicated, correct? Yes, correct, and that was ---- So isn't under those circumstances where there's no other defense, isn't the failure to pursue that defense ineffective assistance of counsel? Not if the facts pretty much foreclose a rational conclusion that Mr. Bradford could possibly have been so intoxicated given what he did. And if we look at his statements in particular, so if the Court would have fined that it was reasonable for the California Supreme Court to uphold those statements as voluntary, if we look at Bradford's statements, he's thinking very clearly about what he's doing that night. He says specifically, when I went home the first time ---- That's a prejudice argument. Yes. My question is, on the first prong of Strickland, isn't a defense attorney who's competent absolutely compelled to present an intoxication defense in this case? No, Your Honor. You've got confessions that are being admitted. It's no doubt that he did it. The only possible defense is intoxication affecting your mens rea, isn't it? I don't ---- What other defense did he have? I'm not sure he has another defense, but I don't believe that that ---- So if you don't have another defense and you've got one that's not frivolous on its face, as a defense lawyer, aren't you compelled to present that defense? Your Honor, I don't think the standard, no. I don't think the standard is frivolousness. I think that an attorney could look at the facts of this case and I'm not ---- And say, I'll present no defense at all. Well, he presented a defense in the sense of the prosecution didn't meet their burden of proof but to ---- Given the confessions, that was a pretty bad decision, wasn't it? Well, these are hard facts for the petitioner. It is, in fact, very difficult in light of the overwhelming evidence that was presented here and his confessions to present a viable defense because there's no question about Bradford's guilt. And so the facts were weighing heavily against him. The confession weighed heavily against him. And so that's a difficult situation for counsel. And yet, counsel, as I mentioned a little while ago, two of the jurors mentioned that they had no sense that he had been really intoxicated. And the difference between first- and second-degree murder is very much influenced by his ability to form a premeditation and planning. Isn't that crucial to whether or not this is first- or second-degree murder? If there was evidence that could have shown that, but again, I think that looking at the facts of this case and Mr. Bradford himself saying, I went back to her apartment in order to make sure she was dead so that she wouldn't be able to identify me and testify against me. Oh, no, no, no, no, no. He went back to be sure, to kill her, basically, so that she wouldn't rat out on him as he said. Exactly. And so in light of that testimony, I don't think that a jury would reasonably believe that he was so intoxicated that he couldn't premeditate when he himself has said, I premeditated it. I went back to my apartment. I was worried she could rat me out, and I decided to go back and make sure she was dead. That is clear evidence of premeditation, and I don't believe that an intoxication defense would have been reasonably accepted by any rational juror on this jury. On the Brady point, and I know you're running out of time, I know your argument is it wouldn't have made any difference. Correct. Is there any dispute on this record that there was a toxicology test that was not given to the defense? I don't know the answer to that question, Your Honor, because the allegations themselves don't show that the test was actually performed. So there are allegations that say they took the blood and we never received any results, but I'm not sure what happened in between. There is an expert who says looking at what they had, I can reach a conclusion. So there must be something that they had. There must be some sort of test that he can look at to make his conclusion from, correct? No, Your Honor, because the expert is actually extrapolating from the testimony at the trial. He's not relying, I don't believe, on the results of a blood test. And so we don't know. It doesn't seem that we know whether that was done. Other questions? All right. Thank you for your argument. So Mr. Bradford's counsel has a little revital time. Thank you, Your Honors. Judge Watford, I did want to give you a direct United States Supreme Court case, McNeil v. Wisconsin, 501 U.S. 171. At 177, the Supreme Court says, if the police subsequently initiate an encounter in the absence of counsel after invocation of the right to counsel, the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence. I'm only using that to show that there's coercive activity. And it's wrong, and it's contradicted by about 10 other Supreme Court cases. There's not a presumption of involuntariness, right? It's a presumption that the waiver of the right to counsel is invalid. That's the limit of the presumption that arises. Yes, Your Honor, and I'm not trying to carry over the presumption of involuntariness, simply the coercive activity. And, Judge Hurwitz, to your point, it does seem that both the State and myself read the California Supreme Court's opinion in the same way. And I know you're drawing this the same way. So let me, without regard to your friend's unwillingness to accept my characterization of the Court's opinion, tell me why it's wrong. It looks to me like the Court looked at all the circumstances, said we don't think these were sufficient, these threats were coercive or threatening enough to render the confession involuntary, or that this conduct was. They may have used the terms interchangeably. But they looked at the facts. They concluded that they weren't coercive enough to render the confession involuntary. And, therefore, they said his mental state doesn't make a difference. Your Honor, that's wrong. So tell me why that's wrong. Because the California Supreme Court doesn't call this, they don't call it coercion. They don't even call it coercive activity. They don't use the right words. Right, but they even say that the trial court, and they put this in quotes, the trial court said they found, quote, improper tactics. But the only improper tactics, but they don't even characterize them as improper tactics. They call them unethical. But they don't even go so far as to call them improper tactics because that's more in line with coercion at this point. So, no, I don't think the California Supreme Court, regardless of the end result they reach of ultimately is this involuntary, they never consider coercive activity. And in Panetti v. Quarterman, which cites to Early v. Packer, we know that if the reasoning of the California Supreme Court or the result is contrary to clearly established federal law, then 2254D is satisfied. Well, do you agree that the California Supreme Court recognized that coercive activity was part of the analysis? They said that coercive activity should be part of the analysis, but that there was no coercive activity here. So what you're saying is that there's an unreasonable finding of fact as opposed to an unreasonable application of law. No, Your Honor. It would still be an unreasonable, when it's a mixed question of law and fact, the failure to consider something as part of the analysis is still an unreasonable application. That's why I'm having some difficulty, and maybe it's just me, since none of the lawyers agreed the case this way. They had the right test, correct? They stated the right test. They stated the totality of the circumstances and then failed to consider a key component of the totality of the circumstances. Yeah, see, that's a factual issue, isn't it? They then looked at all the facts and said, we don't think you meet the test. So I'm trying to figure out where that departs from settled Supreme Court law as opposed to them just getting the facts wrong. Yes, Your Honor. In Williams v. Taylor, the Supreme Court said, the failure to appropriately consider the full body of evidence is an unreasonable determination of clearly established federal law. They did consider the full body here. Your argument is they didn't appropriately consider it, isn't it? It's hard to say that they considered it when they said coercive activity is a part of this analysis and there's no coercive activity. So the failure to consider that continuing interrogation is coercive activity that needs to factor into totality of the circumstances analysis, that's an unreasonable application. You are ignoring a major point of the totality. Let me switch over to one final thing on the Brady claim with respect to the toxicology report. As you know, your client makes the case that or claims that because the lead was not turned over, that his expert was not able to estimate with the exactitude that would have otherwise been possible just how drunk he was. On the other hand, we have some case law that suggests that if defense counsel was aware of the test and in this case didn't ask for it, that your Brady claim is lost. What's your comment on that? Your Honor, that's why we've also argued it as an ineffective assistance of counsel claim as well, that his failure to ask for that test result. And just to quickly follow up on a question that I believe Judge Hurwitz asked earlier, the evidence we have, of course, the blood was drawn and then we have the prosecutor in court asking for another blood drop. Because he needs to run another test, he says. Because all the blood has been tested already and it's been used up. So we know tests were run. We just don't know what the result of those tests were. Correct, Your Honor. Other questions about my colleague? Thank you, Your Honor. Very well, thanks to both counsel for your argument. We know this is a challenging case and we appreciate your good preparation. It's helpful to us. The case just argued is submitted and the court stands in recess. All rise.
judges: M. Smith, Watford, Hurwitz